UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DATA MANUFACTURING, INC., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:05CV2298 JCH |
| ) | |
| NEWBOLD CORPORATION, ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant NewBold Corporation's ("NewBold") Motion to Dismiss, or in the Alternative, to Transfer, filed February 6, 2006. (Doc. No. 7). The matter is fully briefed and ready for disposition.

## BACKGROUND

By way of background, Plaintiff Data Manufacturing, Inc. ("DMI") is a Missouri corporation, with its principal place of business in Missouri. (Compl., ¶ 1). DMI manufactures business forms, specialty printing materials, and plastic gift and loyalty cards. (Compl., ¶ 6).[1] Among other things, DMI has developed and marketed a gift card package that allows merchants to offer customers more purchasing options, including the use of gift cards instead of gift certificates. (Id.). The gift card package consists of a gift card and gift card carrier, to be used in conjunction with a "card swiper" enabling the gift cards to be used at individual merchant locations. (Id.). DMI's gift card package is known as the "Gifsoft Card and Carrier Package" (the "Gifsoft Package"). (Id.).

---

[1] The majority of the Court's background section is taken from DMI's Complaint, to which NewBold has not yet filed an Answer.

DMI has also developed, created and authored operating system software for use with its Gifsoft Package. (Compl., ¶ 7). The software is known as Cardsoft (the "Cardsoft Software"). (Id.). According to DMI, the Cardsoft Software contains several unique and identifying features, and DMI has expended and continues to expend substantial amounts for research and development to create, improve and update the Cardsoft Software. (Id., ¶¶ 8, 9).

DMI applied to the Register of Copyrights, and obtained a Certificate of Registration for the Cardsoft Software, effective July 11, 2003. (Compl., ¶ 11). Since development of the Cardsoft Software, DMI has been and still is the sole proprietor of all its rights, title and interests in and to the copyright in the Cardsoft Software. (Id., ¶ 12).

In or around December, 2003, DMI entered into a Resale Agreement with NewBold, a Virginia corporation with its principal place of business in Virginia (Compl., ¶ 2), stating in relevant part as follows:

> The purpose of this letter is to confirm our agreement with Newbold Corporation ("Newbold") regarding the sale of our standalone Gifsoft card and carrier package.
>
> We have decided to engage Newbold to act as our reseller of the Gifsoft card and carrier package, consisting of: Gifsoft Software; User's Manual; Installation Instructions; Card Loading Instructions/Cards and 500 Cards and Carriers (the "Gifsoft Package"). The term of Newbold's engagement will be for the period beginning January 1, 2004 and ending March 31, 2004 (the "Term"). During the term, we will use Newbold as our exclusive reseller of the Gifsoft Package throughout the continental United States, with the exception of any existing customers of ours that already use or have placed an order for a Gifsoft Package....
>
> Newbold acknowledges we are the owners of Gifsoft and the Gifsoft Package, including all of the intellectual property rights embodied therein and all of the goodwill associated therewith, and that Newbold shall not, by virtue of this letter agreement, our conduct pursuant hereto or otherwise, obtain any license or ownership or claim in or to the Gifsoft Package. We reserve the right to terminate this agreement prior to the expiration of the Term if Newbold breaches any provision hereof.

> This letter agreement shall be governed by Missouri law, and any litigation involving this agreement shall be commenced exclusively in St. Louis County, Missouri or the Federal Eastern District Court located in St. Louis Missouri. The parties hereto agree that they are subject to jurisdiction in such courts, and that venue is proper therein.

(Plaintiff's Opposition to Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer ("DMI's Opp."), attached Exh. 1, Exh. A).

According to DMI, at some point during the Agreement Term or shortly thereafter, certain officers, representative or agents of NewBold admitted that NewBold had, without DMI's permission or authorization, copied and/or made a derivative work of the Cardsoft Software. (Compl., ¶ 16). DMI maintains NewBold did so with the specific purpose of duplicating the software or parts thereof, and infringing DMI's copyright relating to the CardSoft Software. (Id., ¶ 18). DMI further asserts that NewBold now has developed a software program which is identical or substantially similar to DMI's Cardsoft Software in its underlying logic, structure, organization and sequence, as well as in various other respects. (Id., ¶ 19). DMI has notified NewBold that it misappropriated DMI's rights in the Cardsoft Software, and has requested that NewBold cease such activities, but Newbold has refused to do so. (Id., ¶ 20).[2]

According to NewBold, in 2004 and 2005, DMI purchased blank plastic cards from NewBold, in order to print them into customized gift cards for NewBold's GiftCardsWork customers. (Motion to Dismiss, or in the Alternative, to Transfer, ¶ 3). NewBold contends DMI failed to pay for some of the purchases, however, and so NewBold commenced an action against DMI in the Circuit Court for Franklin County, Virginia on October 21, 2005. (Id., ¶ 4). In its action, NewBold alleges breach

---

[2] NewBold denies that its activities in developing its own software program and gift card package, GiftCardsWork, were conducted without the permission or authority of DMI. (Motion to Dismiss, or in the Alternative, to Transfer, ¶ 2). Rather, NewBold maintains DMI not only knew about the GiftCardsWork product, but actually referred at least one customer to NewBold so that NewBold could sell this customer NewBold's software and gift card package. (Id., ¶ 3).

of contract, conversion, and fraud, and seeks both actual and punitive damages. (Defendant NewBold Corporation's Memorandum of Law in Support of its Motion to Dismiss, or in the Alternative, Motion to Transfer ("NewBold's Memo in Support"), attached Exh. B, Exh. 1). DMI removed NewBold's suit to the United States District Court for the Western District of Virginia on December 8, 2005. (Id., attached Exh. B, Exh. 2).

DMI filed the instant Complaint for Copyright Infringement in this Court on December 8, 2005. (Doc. No. 1). In its Complaint, DMI alleges, among other things, that NewBold's wrongful conduct has deprived DMI of business and good will, and that DMI has lost revenues and sustained other damages as a result of NewBold's use of its infringing programs. (Compl., ¶¶ 21, 22). DMI therefore requests that the Court find NewBold has infringed DMI's copyright in the Cardsoft Software, and award both injunctive relief and damages. (Id., PP. 6-7).

As stated above, NewBold filed the instant Motion to Dismiss, or in the Alternative, to Transfer, on February 6, 2006. (Doc. No. 7). In its motion, NewBold first asserts this action should be dismissed, as the claim asserted herein should have been pled as a compulsory counterclaim in the Virginia suit. (Id., ¶¶ 1, 6). In the alternative, NewBold requests that the Court transfer this action to the Western District of Virginia, for the convenience of the litigants and witnesses, and in the interest of justice. (Id., ¶ 10).

## DISCUSSION

### I. Motion To Dismiss

As stated above, in its motion NewBold first asserts this action should be dismissed, because DMI failed to plead its claim as a compulsory counterclaim in the Virginia litigation pending between the parties. (NewBold's Memo in Support, PP. 2-6). Federal Rule of Civil Procedure 13(a) defines a counterclaim as compulsory, "if it arises out of the transaction or occurrence that is the subject

matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." The Court thus must determine whether DMI's copyright infringement claim arises out of the same transaction or occurrence as NewBold's pending breach of contract, conversion, and fraud claims. Tullos v. Parks, 915 F.2d 1192, 1195 (8th Cir. 1990). In doing so, Eighth Circuit law instructs the Court to apply the logical relation test, bearing in mind that one transaction, "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their *logical relationship*." Tullos, 915 F.2d at 1195 (footnote and citation omitted) (emphasis in original).

Upon consideration, the Court finds there is not a logical relationship between DMI's claim, which focuses on NewBold's allegedly unauthorized copying and use of DMI's Cardsoft Software, and NewBold's claims, which focus on DMI's alleged failure to pay for NewBold's blank plastic gift cards, sufficient to render DMI's claim a compulsory counterclaim in the Virginia action. Blue Dane Simmental Corp. v. American Simmental Ass'n, 952 F.Supp. 1399, 1410 (D. Neb. 1997). In reaching this conclusion, the Court specifically notes as follows: (1) critical facts relating to knowledge, intent, and culpability between the two sets of claims are very different; and (2) the legal issues between the two sets of claims are materially different. Id.; see also Chemtech Industries, Inc. v. Goldman Financial Group, Inc., 156 F.R.D. 181, 185 (E.D. Mo. 1994) (citation omitted) ("Moreover, plaintiffs' claims and the counterclaims raise divergent factual and legal issues and are governed by different bodies of law."). The Court thus concludes DMI's claim is not a compulsory counterclaim within the meaning of Federal Rule of Civil Procedure 13(a), and so NewBold's Motion to Dismiss on this basis will be denied.[3]

---

[3] The Court notes that while NewBold's contention DMI knew of NewBold's competing product, and even referred a customer to NewBold, may provide a defense to DMI's copyright infringement claim, it does not convert DMI's claim to a compulsory counterclaim under Rule 13(a).

**II.     Motion To Transfer**

In its motion, NewBold next asserts that for the convenience of the litigants and witnesses, and in the interest of justice, this action should be transferred to the Western District of Virginia. (NewBold's Memo in Support, PP. 6-11). 28 U.S.C. § 1404(a) governs the ability of a federal district court to transfer a case to another district. This provision states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Id.[4] In considering a § 1404(a) motion, the Court gives great weight to the plaintiff's choice of a proper venue, and will only disturb that choice upon a clear showing that the balance of interests weighs in favor of the movant's choice of venue. Anheuser-Busch, Inc. v. City Merchandise, 176 F.Supp.2d 951, 959 (E.D. Mo. 2001) (citations omitted). "The interests which the Court should consider include: 1) the convenience of the parties; 2) the convenience of non-party witnesses; 3) the availability of judicial process to compel testimony from hostile witnesses; 4) the governing law; 5) relative ease of access to sources of proof; 6) possibility of delay and prejudice if a transfer is granted; and 7) practical considerations of cost and efficiency." Id. (citation omitted); see also Terra Intern., Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 691 (8th Cir.), cert. denied, 522 U.S. 1029 (1997). Further, "[t]he 'primary, if not most important' of these interests is the convenience of the witnesses." Anheuser-Busch, 176 F.Supp.2d at 959, quoting May Dept. Stores Co. v. Wilansky, 900 F.Supp. 1154, 1165 (E.D. Mo. 1995).

Upon consideration, the Court finds the balance of factors taken into account under § 1404(a) favors denying NewBold's Motion to Transfer. First, as to the convenience of the parties, the Court finds this factor is neutral; in other words, while it would be more convenient for NewBold to litigate

---

[4] DMI does not dispute this action could have been brought in the Western District of Virginia.

this case in Virginia, it is more convenient for DMI to litigate here.[5] With respect to the convenience of non-party witnesses, the Court notes that of the two mentioned by NewBold, only one (Chuck Renfroe) even resides in Virginia[6]; the other resides in North Carolina. (Defendant NewBold Corporation's Reply Memorandum in Support of its Motion to Dismiss, or in the Alternative, Motion to Transfer, P. 9). Further, with respect to the governing law, the Court notes without deciding that should this action be found to arise out of or involve the Resale Agreement, the litigation will be governed by Missouri law. (See DMI's Opp., attached Exh. 1, Exh. A).[7] The Court thus finds consideration of both the convenience to parties and non-party witnesses, and the governing law, weighs in favor of maintaining the action in this Court.

Finally, the Court's review of the record demonstrates the remaining factors weigh in favor of maintaining jurisdiction of this action in this Court as well. For example, NewBold offers no evidence regarding the availability of judicial process to compel testimony from hostile witnesses, or the possibility of delay and prejudice if a transfer were granted. With respect to the relative ease of access to sources of proof, NewBold asserts relevant physical and testimonial evidence "is far more accessible in Virginia," but fails to specify the nature of such evidence. (NewBold's Memo in

---

[5] The Court finds this factor actually may favor DMI, because while DMI's most important employee witnesses all reside in Missouri (DMI's Opp., P. 10), several of NewBold's corporate officers apparently reside in North Carolina, not Virginia. (NewBold's Memo in Support, P. 9 and attached Exh. A, ¶ 9).

[6] The Court further notes that with respect to Mr. Renfroe, NewBold fails to state even in general terms the nature of the testimony he would provide.

[7] As further support for its ruling, the Court notes that should this action be found to involve the Resale Agreement, there exists a forum selection clause in that document requiring, "any litigation involving this agreement [to] be commenced exclusively in St. Louis County, Missouri or the Federal Eastern District Court located in St. Louis Missouri." (See DMI's Opp., attached Exh. 1, Exh. A).

Support, P. 9).[8] Further, with respect to the practical considerations of cost and efficiency, NewBold argues transferring this action to the Western District of Virginia will conserve judicial resources, as, "there already is pending in the Virginia federal court an action between the parties that presents the same issues involved in this suit." (NewBold's Memo in Support, PP. 7-8). As held above, however, this Court finds the two actions do not present the same issues, and thus will not require presentation of the same evidence. Based on the foregoing, the Court concludes NewBold has failed to meet its burden under § 1404(a) of establishing that transfer is warranted, and so the Motion to Transfer must be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant NewBold Corporation's Motion to Dismiss, or in the Alternative, to Transfer (Doc. No. 7) is **DENIED**.

Dated this 6th day of April, 2006.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[8] In any event, the Court finds this factor only slightly weighs in favor of NewBold, if at all, as NewBold fails to dispute DMI's assertion that relevant documents are located in North Carolina as well as Virginia. (DMI's Opp., P. 12).